IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OSVIL LEONEL CONTRERAS MADRID, *Plaintiff,* v. WAL-MART STORES, L.P., *Defendant.* | CIVIL ACTION NO. 24-5229 |

**Pappert, J.**                                                                                                              **June 17, 2025**

**MEMORANDUM**

Many rules—procedural, substantive, ethical and otherwise—govern the practice of law. One of them is Federal Rule of Civil Procedure 11. Among other things, Rule 11 requires lawyers to properly investigate and research the facts and the law before filing a lawsuit or other papers with courts. In other words, lawyers must "stop, look and listen" before they go around suing others.

Marc Simon races through the courts wearing blinders and headphones. Based on his admissions and his conduct in this case and others, at any given time, Mr. Simon has no idea who he is suing and what the people and entities on the wrong end of his cookie-cutter complaints allegedly did to be dragged into our civil-justice system. And as this case demonstrates, Simon is, regrettably though inevitably, infecting those who work for him with the same maladies. Here, Simon filed a complaint in state court over an alleged slip and fall in a Philadelphia Walmart. He was the only lawyer named on the pleading, with a squiggle purporting to be his signature at the bottom. On the attached verification page, with his name under the same purported signature, Simon,

1

"subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities," stated the facts alleged in the complaint were true and correct to the best of his knowledge, information and belief.

But he never signed either document—consistent with his firm's "practice" and "protocol," one of the paralegals at Simon & Simon, P.C. did. He couldn't even identify which one of his firm's staff members did so. Even worse, Simon did not draft the complaint, he did nothing to prepare it, he never read it, investigated its allegations or even approved its filing in the common-pleas court. It was churned out by the firm's non-lawyer staffers as part of what another judge on this Court has termed the firm's practice of mass-producing lawsuits without the requisite research and investigation. Simon's colleague Henry Gosnear—who had the same purported "signature" over his name—also permitted an unidentified paralegal to prepare, sign and file his unresearched motion to amend the complaint in what the Court subsequently found to be a baseless effort to defeat diversity jurisdiction, something Simon and Gosnear have a demonstrated practice of doing.

Simon and Gosnear's conduct is inimical to the legal profession and for the reasons discussed more fully below, the Court imposes the appropriate sanctions and refers them both to the Chief Judge pursuant to Local Rule of Civil Procedure 83.6(V)(A).

I

In March of 2024, Simon sued Walmart Stores East, LP and Angel Sanabria in the Philadelphia County Court of Common Pleas, alleging that his client, Osvil Leonel Contreras Madrid, slipped and fell while shopping in the Walmart store at 4600

2

Roosevelt Boulevard. (Compl. ¶¶ 2–3, 11, ECF No. 1-4.) The complaint was not specific with respect to Sanabria's alleged role in the incident. To start, it labeled him a "business entity registered to do business in the Commonwealth of Pennsylvania," with the same address as the Walmart store. (Compl. ¶ 3.) Next, it alleged that, at the time of the accident, Sanabria was "the owner, operator, maintainer, possessor, lessor, lessee and/or otherwise legally responsible for the care, control and safety of the premises." (*Id.*) Finally, it alleged Sanabria negligently failed to take generic actions that might have prevented the accident. (*Id.* at ¶ 19.)

On September 30, 2024, Walmart removed the case to federal court, contending Simon fraudulently joined Sanabria to defeat diversity jurisdiction. (Not. of Removal ¶¶ 28–36, ECF No. 1.) Simon never moved to remand the case back to state court; instead, on November 4, 2024, Gosnear sought leave to file an amended complaint, (Mot. for Leave to Am., ECF No. 10), replacing Sanabria with Shanell Henry as the purported manager of the Walmart store, (Prop. Am. Compl., ECF No. 10-5). On March 14, 2025, the Court dismissed Sanabria from the case and denied leave to join Henry, finding the purpose of both claims was to defeat diversity jurisdiction. (Mar. 14, 2025 Mem., ECF No. 14.)

The fraudulent-joinder issue and the motion for leave to amend raised questions about Simon and Gosnear's conduct. Specifically, it seemed the claims against Sanabria and Henry were factually unfounded, legally dubious, and ginned up for the sole purpose of precluding federal jurisdiction. *See generally* (Mar. 14, 2025 Mem.). So the Court ordered Simon and Gosnear to explain why they should not be sanctioned. (Rule to Show Cause, ECF No. 16.) Simon and Gosnear filed their initial response and

exhibits on March 31, 2025, (ECF No. 21), and the Court held a show-cause hearing on April 10, 2025, (ECF No. 23). Both parties filed several supplemental responses in the succeeding weeks. (ECF Nos. 29, 32, 35, 38.)

## II

Federal Rule of Civil Procedure 11 imposes an affirmative duty on attorneys to conduct a reasonable inquiry into the factual and legal bases of all claims before filing any document with the court. *Bus. Guides, Inc. v. Chromatic Commc'ns Ents., Inc.*, 498 U.S. 533, 551 (1991). The Rule states in part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3). The Court may, *sua sponte*, order an attorney to show cause why their conduct does not violate Rule 11. Fed. R. Civ. P. 11(c)(3).

In deciding whether to impose Rule 11 sanctions, a court must determine whether the attorney's conduct was reasonable under the circumstances. *See Bus. Guides, Inc,* 498 U.S. at 551. Reasonableness is "objective knowledge or belief at the time of the filing of the challenged paper" that the claim is well-grounded in law and

fact. *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)). "The reasonableness of counsel's conduct depends on several factors, including 'the amount of time available to conduct the factual and legal investigation; the necessity for reliance on a client for the underlying factual information;' and 'the complexity of the legal and factual issues implicated.'" *Shelton v. Chaudhry*, 763 F. Supp. 3d 675, 683 (E.D. Pa. 2025) (quoting *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 207 (3d Cir. 2019)). Sanctions are only imposed in "exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)).

### III

The Court ordered Simon and Gosnear to address three grounds for potential sanctions: Whether (1) Sanabria or Henry were joined as defendants for an improper purpose, such as defeating federal jurisdiction; (2) the claims against Sanabria or Henry were warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; and (3) after reasonable inquiry, counsel believed there was evidentiary support for the factual allegations with respect to Sanabria or Henry's alleged role in the incident. (Rule to Show Cause at 2.) The Court declines to sanction Simon or Gosnear on grounds (1) or (2) but the record confirms they both violated Rule 11(b)(3) by failing to conduct a reasonable inquiry into their claims against both Sanabria and Henry, which lacked any evidentiary support.[1]

---

[1]  Both Simon and Gosnear are subject to sanctions for the claim made against Sanabria in state court. Simon signed his name on the state-court complaint, and "a federal court may apply a

A

Attorneys are subject to sanctions when they file motions or pleadings "for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Simon's joinder of Sanabria, paired with Gosnear's attempt to sub in Henry when confronted with a fraudulent-joinder argument he knew he couldn't win, suggests that their conduct was designed solely to defeat federal jurisdiction rather than to pursue their claims in good faith.

Simon and Gosnear are correct that the fraudulent-joinder doctrine doesn't require a finding of actual fraud or bad faith, (Resp. at 15, ECF No. 21), but that does not foreclose the Court from finding that Sanabria was fraudulently joined for an improper purpose under Rule 11. *See, e.g.*, *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1258 (8th Cir. 2013) ("Butler's now trite attempts to avoid federal court by engaging in fraudulent joinder in order to then challenge federal subject matter jurisdiction are unacceptable. The district court was well within its discretion to impose sanctions under Rule 11."); *cf. Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 808 (11th Cir. 2003) (noting that attorneys are subject to sanctions for "making a representation to the court for an improper purpose, such as merely to defeat diversity jurisdiction"); *Butler v. Bank of America, N.A.*, 690 F.3d 959, 962–63 n.3 (8th

---

state-law counterpart to Rule 11 to a pleading filed in state court prior to removal." *Griffen v. City of Oklahoma City*, 3 F.3d 336, 341 (10th Cir. 1993) (collecting cases); *see also Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) ("If the state pleading rules did not apply, then nothing would govern the original pleadings in these cases, and a party who filed in bad faith might escape any penalty."). Pennsylvania's counterpart to Rule 11 is virtually identical to Rule 11. *See* Pa. Rule Civ. P. 1023.1. Further, while Gosnear did not sign the state-court complaint, he later defended its allegations in his motion for leave for amend. (Mot. for Leave to Am. at 2); *Waugaman v. City of Greensburg*, 841 Fed. App'x 429, 434 (3d Cir. 2021) ("[A]fter a complaint is filed you can subject yourself to sanctions if you persist in advocating a legally untenable position."). Conversely, only Gosnear is sanctionable for the proposed claim against Henry, as he was the only one to sign the motion for leave to amend and the proposed amended complaint, and Simon didn't later advocate for the claim against Henry.

Cir. 2012) (threatening sanctions where a serial litigant had a "pattern" of "fraudulently join[ing] a single nondiverse defendant . . . in an attempt to block removal to federal court").  However, the Third Circuit Court of Appeals has never decided whether a questionable course of litigation conduct designed solely to deprive defendants of their right to invoke federal jurisdiction might be an improper purpose under Rule 11.  And the Court need not decide the issue here, as Simon and Gosnear's conduct fits more squarely under Rule 11(b)(3).  *See infra*, Section III.C.

### B

Sanctions are warranted when attorneys advance "claims, defenses, and other legal contentions" that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law."  Fed. R. Civ. P. 11(b)(2).  In its March 14, 2025 memorandum, the Court concluded that (1) Simon and Gosnear's claims against Sanabria failed to state a colorable claim for relief under Pennsylvania's participation theory, and (2) Gosnear's proposed amended complaint made only minor changes to the state-court complaint's negligence allegations and was designed to defeat diversity jurisdiction.  (Mar. 14, 2025 Mem. at 8–9.)  Simon and Gosnear contend their claims against Sanabria and Henry were warranted by a nonfrivolous argument for extending existing law.  (Resp. at 15.)  They rely on the so-called deliberate-inaction theory, under which they claim store managers can be held liable pursuant to the participation theory when they deliberately choose not to act in the face of a known risk of bodily harm.  *Id.*  They cite one Pennsylvania case for this proposition: *B&R Resources, LLC v. Department of Environmental Protection*, 180 A.3d 812 (Pa. Commw.

7

Ct. 2018) ("[I]ntentional and knowing inaction can be sufficient to support participation theory liability for a statutory violation.").

Simon and Gosnear's claim against Sanabria stood on shaky legal ground but does not rise to the level of sanctionable conduct under the Rule. *B&R Resources* isn't a state supreme court decision and is distinguishable in that its holding was expressly limited to statutory violations. *Id.*; *see also Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 344 F. Supp. 3d 814, 825 n.11 (E.D. Pa. 2018). Although the Commonwealth Court's reasoning could arguably be extended to slip-and-fall cases, Simon's state-court complaint "asserts only negligence claims [and] does not allege a colorable claim of knowing and intentional inaction" by Sanabria. *Aldorasi*, 344 F. Supp. 3d at 825 n.11. Nonetheless, Simon and Gosnear cite a handful of federal district court cases in which complaints alleging purely negligent failures to act were remanded back to state court. *See, e.g.*, *Camilli v. Wal-Mart Stores, Inc.*, No. 18-2849, 2019 WL 1432481, at *4 (E.D. Pa. Mar. 28, 2019); *Ahearn v. BJ's Wholesale Club, Inc.*, No. CV 19-3012, 2020 WL 1308216, at *2–3 (E.D. Pa. Mar. 18, 2020). These cases, though in the minority and at odds with the participation theory (even as stated by *B&R Resources*), caution against sanctions for Simon and Gosnear's claim against Sanabria. *See* Fed. R. Civ. P. 11, 1993 Advisory Committee Notes (requiring courts to be more lenient for claims supported by "minority opinions").

Similarly, Gosnear shouldn't be sanctioned for his allegations against Henry in the proposed amended complaint, which included additional, repetitive allegations of "negligent" conduct now allegedly attributable to Henry instead of Sanabria. (Prop. Am. Compl. at 5–8.) The Court, applying the *Hensgens* factors, found that Gosnear

8

sought to add Henry for the sole purpose of defeating federal jurisdiction. (Mar. 14, 2025 Mem. at 12.) The proposed amended complaint contained no allegations of Henry's personal participation in the slip-and-fall, nor that she knew about the specific spill that caused Contreras Madrid's alleged injury yet consciously chose not to act. Nonetheless, Gosnear claimed Henry was "personally aware of the risks of spills on the floor inside the Walmart store." (Prop. Am. Compl. ¶ 16a.) Though this allegation is inadequate to state a colorable claim under the participation theory, it suggests Gosnear was attempting to plead his proposed deliberate-inaction theory. Gosnear's legal contentions, though baseless, don't comprise the sort of exceptional circumstances that warrant sanctions under Rule 11(b)(2).

C

Rule 11 requires counsel to conduct an "inquiry reasonable under the circumstances" to ensure they make "factual contentions [that] have evidentiary support, or if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation." Fed R. Civ. P. 11(b)(3). In other words, counsel must "look before leaping." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) ("The rule . . . may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"). Here, Simon and Gosnear violated Rule 11 by "naming a defendant without having conducted a reasonable inquiry to establish a factual foundation for the claim." *Bumpus v. Bosma*, 121 F.3d 714, 1997 WL 449693, at *2 (9th Cir. 1997); *see also Bus. Guides, Inc.*, 498 U.S. at 541 ("[T]he meaning of the Rule seems plain: A party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned.").

When initially evaluating the complaint's allegations against Sanabria and the proposed amended complaint's similar allegations against Henry, it appeared to the Court that Simon and Gosnear had no reason to believe that either individual was involved in the alleged slip-and-fall. The Court asked them to provide more detail about the factual investigation they performed and whether they felt their factual contentions had, or likely would have, evidentiary support. (Rule to Show Cause at 2.) The exhibits they submitted, paired with their testimony at the show-cause hearing, confirmed the Court's concerns. To start, nothing they submitted in response to the Show Cause Order suggests they conducted any investigation into the Walmart store manager's potential involvement in the accident. What's more, it seems this failure is part of a troubling pattern. Beginning in at least 2022, in slip-and-fall cases against retail stores, Simon and Gosnear identified non-diverse individuals they could label a manager and stamped his or her name on a standard-form complaint with rinsed-and-repeated allegations. These claims were seemingly designed to preclude federal jurisdiction, so no research was done into their veracity. Pursuant to this practice, Simon and Gosnear conducted no inquiry into whether Sanabria or Henry participated in the slip-and-fall alleged here.

Exhibits Simon and Gosnear submitted, their often incredible testimony at the show-cause hearing, and their filings in other cases in this district compel these conclusions. First, the state-court complaint matches, nearly verbatim, Simon and Gosnear's other slip-and-fall complaints that have been removed dating back to at least mid-2022. *See generally, e.g.*, (Gamble Compl., ECF No. 21-4); (Hill-Greene Compl.,

ECF No. 21-9.)[2]  The only differences are in paragraphs in which names and addresses needed to be switched out.  Even that task was performed haphazardly, as Sanabria's name was erroneously added to the standard-form corporate defendant paragraph, resulting in him being called a "business entity" with a "business address." (Compl. ¶ 3.)  In the proposed amended complaint, Henry's "business address" is listed as Walmart's address and no domicile is alleged, (Prop. Am. Compl. ¶ 3), which lawyers of Simon and Gosnear's experience should know is required of all pleadings in federal court.  *See Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478 (3d Cir. 1979) ("Allegations of the citizenship of all parties to the lawsuit must appear in the complaint."). This pattern comports with the Simon firm's "clear pattern of facially deficient pleadings—particularly with respect to jurisdiction and venue," *Shelton*, 763 F. Supp. 3d at 686 n. 8 (collecting cases), and confirms Judge McHugh's suspicion in that case that the Simon firm "prepares pleadings on a mass production basis without investing time and attention in understanding the basic facts of the case." *Id*.

---

[2]      *See also, e.g.*, *Bailey v. Speedway, LLC, et. al.*, No. 22-3413, ECF No. 1 (notice of removal arguing fraudulent joinder of Cinquetta Rouse); *Marshall v. Wal-Mart Stores East, LP*, No. 22-3469, ECF Nos. 1 (notice of removal arguing fraudulent joinder of Tyler James); *id.*, ECF No. 11 (amended complaint adding a new non-diverse defendant); *Gonzalez v. Walmart Stores East, LP*, No. 22-3487, ECF No. 1-1 (removed state-court complaint joining Aleksandros Mehmetllari); *Azalia Graham v. Chuck E. Cheese, et. al.*, No. 22-4534, ECF No. 1 (notice of removal arguing fraudulent joinder of Sitala Terrell Holloway); *id.*, ECF No. 1-1 (removed state-court complaint calling Holloway a "business entity" with a "business address"); *Lopez v. Walmart Stores East, LP*, No. 23-2184, ECF No. 1-6 (amended state-court complaint joining Gregory Gerth after removal); *Billops v. Target Corp.*, No. 23-3437, ECF No. 1 (notice of removal arguing fraudulent joinder of three non-diverse corporate defendants); *Cheryl Latimore v. Briad Wenco, LLC*, No. 23-3542, ECF No. 1 (notice of removal arguing that Labreia James was fraudulently joined); *id.*, ECF No. 10 (moving to remand based on amended complaint).

In all these cases, Gosnear and Simon were counsel of record.  In most of them, the purported manager-defendant's address was simply listed at the store location and the language otherwise matched the complaint used here.

Second, Simon and Gosnear limit their investigations to identifying the name of any nondiverse Walmart manager—not necessarily the store manager—to add to the complaint and do nothing to confirm if that manager was involved in the accident. As they both admit, their investigation into Sanabria's involvement was limited to checking the firm's prior cases against the same Walmart store to find a potential manager. (Resp. at 10); (Show Cause H'rg Tr. at 46:13–15.) But of course, their prior allegations against a purported manager tells them nothing about that same manager's alleged involvement in a *different* slip-and-fall. Rather, all they looked for was a *name*—any name they could use to stay in state court. That search turned up an incident report from their prior Gamble litigation, assigned to Judge Hodge, naming Sanabria as the "associate the incident was reported to" and on which Sanabria signed his name on the "management signature" line. (ECF No. 21-3.) Further, an "associate witness statement" from the Gamble case lists Sanabria as a "department manager." (ECF No. 21-6.) Based on these documents alone, (Resp. at 18), Simon and Gosnear determined that Sanabria might possibly be the store manager—even though he's never listed as such—and sued him. But Judge Hodge denied their motion to join Sanabria in the Gamble case because "the purpose of Plaintiff's proposed amendment is to defeat federal jurisdiction" and "Plaintiff has [] not alleged any facts regarding Sanabria's role or relationship to Defendant Walmart." (ECF No. 32.)

Third, after a potential manager has been identified, Simon and Gosnear broadly authorize paralegals to add the manager's name to a standard-form complaint, then "sign" and file it without any further inquiry. Before the show-cause hearing, the Court noticed that all the filings in this case—and in the earlier litigations—bore the same

purported signature, whether signed over Simon's name or Gosnear's. *See, e.g.*, (Compl. at 15); (Prop. Am. Compl. at 9); (Gamble Compl. at 17–18); (Hill-Greene Compl. at 19–20.) When questioned on this, Simon stated that, pursuant to the firm's policy, paralegals *prepare* the pleadings, present them to the supervising attorney for approval, *sign* them, and *file* them. (Show Cause H'rg Tr. at 17:25–18:4.) Simon's testimony that, before having a paralegal sign and file the complaints, he reads "every word" of them was abjectly false. (Show Cause H'rg Tr. at 21.) Even a non-lawyer who read this complaint would have noticed that Sanabria, a human being, was described on page one as a "business entity" with a "business address." (Compl. ¶ 3.) Simon never caught this glaring mistake because he never read the complaint, or for that matter his purported verification accompanying it.

Similarly, Gosnear claimed he "wrote" the proposed amended complaint and "authorized" his paralegal to sign and file it. (Show Cause H'rg Tr. at 15:21–22.) But that testimony is similarly fatuous given that the complaint was a standard template into which the paralegals plugged the names *du jour*. And had he read it, he would have noticed that the proposed amended complaint failed to properly allege Henry's citizenship. He didn't read it because he uses a boilerplate complaint and makes no changes to either the factual or legal contentions. The firm's paralegals, unlicensed "practitioners" all, seem to have free rein over the entire complaint-manufacturing process.

Finally, the abbreviated timeline of Gosnear's factual inquiry into his proposed amended complaint confirms its unreasonableness. After Walmart removed this case on the theory that Sanabria was fraudulently joined, Gosnear never attempted to

defend the indefensible claims against Sanabria by moving to remand. Instead, he went back to the drawing board, hastily identified another potential manager, and added more unresearched allegations. On November 1, 2024, one paralegal asked two other paralegals to search, for the first time, "Angele Sanabria" on "Accurint"—a subscription service containing a range of information on individuals. (ECF No. 21-7.) That afternoon, Gosnear ran a Google search, determined Shanell Henry was a "store manager at Walmart," and asked the paralegals to run an Accurint search on her. (ECF No. 21-8.) At the hearing, Gosnear could not remember what that search turned up, but emphasized the paralegals usually use Accurint to find the purported manager's "residency for diversity purposes." (H'rg Tr. at 45:11-20.)[3] The next business day, November 4, 2024, Gosnear filed the motion for leave to join Henry as a defendant. (ECF No. 10.) This quick turnaround between "investigation" and filing confirms that Gosnear's inquiry was limited solely to identifying the name of a new potential manager; no investigation was done into whether Henry might have been involved in the accident.[4]

---

[3]  The record suggests that even Accurint searches are rare. Few of Simon and Gosnear's slip-and-fall complaints include the purported manager's address. *See supra* Note 2. Nearly all of them listed the manager's address as the retail store in Pennsylvania where the alleged slip-and-fall occurred. And the only Accurint search for Sanabria was performed November 1, 2024, months after the state-court complaint was filed. (ECF No. 21-7).

[4]  A proper investigation would have confirmed that Henry could not have been involved, as she was the manager of a different Walmart store. (Resp. at 25.) Simon and Gosnear admit that this was another "unfortunate mistake," (Show Cause H'rg Tr. at 29:2), and submitted an internet list of Philadelphia Walmart stores to show that both store locations are on Roosevelt Boulevard, (ECF No. 21-5). This list, found on March 24, 2025 in preparation for the show-cause hearing, (*id.*), should have been consulted as part of a reasonable inquiry in preparing the proposed amended complaint.

\*   \*   \*

"As officers of the court, lawyers must not mislead courts. So before they state facts, they must investigate reasonably." *Wharton v. Superintendent Graterford SCI Phila. Dist. Attorney's Off.*, 95 F.4th 140, 151 (3d Cir. 2024). When suing retail stores in slip-and-fall cases, Simon and Gosnear have for years engaged in the practice of joining as co-defendants potential store managers based on unresearched, template allegations. They have done so not to pursue these claims in good faith, but to deter defendants from exercising their right to invoke federal jurisdiction. It was pursuant to this practice that Simon and Gosnear advanced claims against Sanabria and Henry for which they failed to conduct even a *de minimis* factual inquiry.

## IV

A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed R. Civ. P. 11(c)(4); *Doering*, 857 F.2d at 194. District courts have wide discretion to select the type of sanction imposed. *Lieb*, 788 F.2d at 158. Because misconduct lies along a continuum, courts consider factors such as the willfulness of the violation, the attorney's reputation, his history of filing frivolous actions and the degree of frivolousness involved in the present case. *See, e.g.*, *Doering*, 857 F.2d at 194.

These factors combine to call for serious sanctions, but there are mitigating considerations as well. In *Shelton v. Chaudhry*, Judge McHugh earlier this year sanctioned Simon for inadequately researching allegations, pleading false statements in repeated filings, failing to analyze the law before submitting filings, and improperly pleading facts related to jurisdiction. 763 F. Supp. 3d at 675. The Court formally

reprimanded Simon, imposed monetary sanctions in the amount of $7,500, and ordered him to distribute the sanctions opinion to every attorney at the Simon & Simon firm. *Id.* at 688–89. In response, the firm has implemented an internal peer review process to ensure that every filing is thoroughly vetted, retained outside counsel to review all Simon & Simon filings in this district, imposed a moratorium on filing new civil actions in this district, (Resp. at 28), and scheduled biweekly meetings between supervisory and assigned attorneys to discuss all existing filings, (Supp. Resp. at 2, ECF No. 29).

Simon and Gosnear's conduct in this case occurred prior to Judge McHugh's opinion and the implementation of these remedial measures. The sanctions imposed here will respect those previously imposed and are tailored accordingly. The Court cannot, however, overlook that Simon, Gosnear and obviously others delegated to paralegals and other non-attorney staff work that lawyers are supposed to be doing. Moreover, since at least mid-2022, Simon and Gosnear engaged in a practice of adding as defendants purported retail managers accompanied by standard-form allegations, all to defeat federal jurisdiction. Firm paralegals identified the potential managers and prepared, signed and filed complaints with limited, if any, attorney oversight. *Cf. Shelton*, 763 F. Supp. 3d at 686 ("[T]he number of improperly pled claims indicate that more severe sanctions are necessary for deterrence."). This conduct was clearly willful; Simon, Gosnear and the paralegals were all acting pursuant to a firm "protocol." (Show Cause H'rg Tr. at 10:7–8.) As lawyers who have been practicing for approximately twenty years each, (*Id.* at 12:15–16, 25:9), Simon and Gosnear know better.[5]

---

[5] Walmart also cites a 2018 Pennsylvania Disciplinary Board decision in which Simon was publicly reprimanded for failing to respond to discovery requests. (ECF No. 32-1.) The Disciplinary Board characterized Simon's conduct as, in part, a failure to adequately manage his firm and oversee its staff, which is certainly true here as well.

The Court first formally reprimands Simon and Gosnear. A reprimand, mild compared to other sanctions like monetary penalties, should be viewed as an invitation to reform. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1336 (2d ed. Supp. 1996) ("Rule 11 contemplates greater use of nonmonetary sanctions, including reprimands, orders to undergo continuing education, and referrals to disciplinary authorities.").

Simon and Gosnear must also each take twelve hours of CLE courses on supervising law-firm personnel, the Pennsylvania Rules of Professional Responsibility, federal subject-matter jurisdiction, or the Federal Rules of Civil Procedure. *See DiPaolo v. Moran*, 407 F.3d 140, 144 (3d Cir. 2005) (affirming a sanction of twelve hours of additional CLE courses on subjects related to the sanctioned conduct). These hours must be in addition to, and not in lieu of, the twelve hours of annual CLE required by the Pennsylvania Continuing Legal Education Board.

Further, Simon must distribute a copy of this Memorandum and accompanying Order to all firm staff, paralegals and otherwise. And Simon and Gosnear must file on the docket and mail to the clerk of the United States District Court for the Eastern District of Pennsylvania for general distribution status updates, showing (1) which CLE courses were chosen and certifying that they have been completed, (2) when it has distributed this Memorandum and the accompanying Order to all Simon & Simon, P.C. staff, (3) when the firm lifts its moratorium on filing cases in this district, and (4) how their adopted procedures have addressed the conduct identified in this opinion.

17

Finally, pursuant to Local Rule of Civil Procedure 83.6(V)(A), the Court refers Simon and Gosnear to Chief Judge Goldberg to issue an order to show cause why their misconduct should not warrant discipline.

An accompanying Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.